UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ASHLEY E. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-1144 PLC |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Ashley E. Watson seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

I.      **Background and Procedural History**

In March 2018, Plaintiff, who was born in February 1993, filed an application for DIB, alleging she was disabled as of November 1, 2017, as a result of a schizoaffective disorder, schizophrenia, bipolar disorder, and attention deficit hyperactivity disorder. (Tr.  86-97)  The Social Security Administration (SSA) denied Plaintiff's claim, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 86-98, 99-103, 106-107)  The SSA granted Plaintiff's request for review and conducted a hearing on July 30, 2019.  (Tr. 34-84)

---

[1] Kilolo Kijakazi became the Acting Commission of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

On October 30, 2019, the ALJ issued a decision finding Plaintiff not disabled. (Tr.  8-30)

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which

denied review. (Tr. 1-5, 161-163)  Plaintiff has exhausted all administrative remedies, and the

ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07

(2000).

## II.      Evidence Before the ALJ

Plaintiff does not challenge the ALJ's determinations regarding the severity of her

impairments, that her impairments did not meet or equal a listing, or her residual functional

capacity (RFC). [ECF No. 14] Instead, Plaintiff challenges the ALJ's determinations related to

whether the Commissioner established that, given Plaintiff's RFC, age, education, and work

experience, there are a significant number of jobs in the national economy that she can perform.

[ECF No. 14] Consequently, the Court limits its discussion to the evidence related to these issues.

Vocational expert Delores Gonzalez testified at the hearing.  The ALJ asked Ms. Gonzalez

to consider a hypothetical individual with Plaintiff's age, education, and work experience with no

physical limitations but the following non-exertional limitations:

> the person would be limited to simple and/or repetitive-type work that didn't
> require close interaction with the public in the sense of no jobs like customer service
> or retail sales and no close interaction with co-workers to determine work duties,
> work processes, work locations, work tools, things of that nature; no teamwork-
> type jobs, solitary-type employment.

(Tr.  70)

Ms. Gonzalez concluded that such an individual could not perform Plaintiff's past work

but could perform other jobs such as addresser, document preparer, and housekeeping cleaner. (Tr.

69-70) The ALJ modified the hypothetical to include "that the person could vary the work effort

throughout the day as long as the person…could achieve, you know, the work goals every day,

except there wouldn't be…a constant level approach to the work." (Tr.  70) In response to the modified hypothetical, Ms. Gonzalez testified the cited jobs could be performed under an "end-of-day rather than paced production" requirement. (Tr.  70)  Ms. Gonzalez stated the number of jobs in the national economy for each of these jobs were: 4,641 for addressers; 46,646 for document preparers; and 133,343 for housekeeping cleaners.  (Tr.  70)

Upon cross-examination, Ms. Gonzalez testified that, pursuant to the Dictionary of Occupational Titles (DOT)[2] and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)[3], the "reasoning level" of a housekeeping cleaner was level one, an addresser was level two, and a document preparer was level three. (Tr. 72). Ms. Gonzalez explained a reasoning level two is defined as "applying commonsense understanding to carry out detailed, but uninvolved written/oral instructions; deal[ing] with problems involving a few concrete variables in or from standardized situations[,]" while a reasoning level three was defined as "applying commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form; deal[ing] with problems involving several concrete variables in or from standardized situations."  (Tr.  72-73) After setting out these definitions, Ms. Gonzalez asked Plaintiff's counsel: "Would you like for me to cite a different

---

[2] The DOT is published by the U.S. Department of Labor and provides "standardized occupational information" by listing the functional requirements for jobs available in the national economy. Dictionary of Occupational Titles, (4th rev. ed. 1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTINTRO. See also Stanton v. Commissioner, Social Security Administration, 899 F.3d 555, 558 (8th Cir. 2018).  Use of the DOT has been approved for use in SSA disability cases. 42 U.S.C. §1566(d)(1); Smith v. Shalala, 46 F.3d 45, 47 (8th Cir. 1995).

[3] The SCO is a companion publication to the DOT published by the Department of Labor and is a SSA resource that lists occupations existing in the economy and explains some of the functional requirements of those occupations. See Social Security Ruling 00-04p, 2000 WL 1898704; Courtney v. Commissioner, Social Security Administration, 894 F.3d 1000, 1002 (8th Cir. 2018); Pearson v. Colvin, 810 F.3d 204, 205 n.1 (4th Cir. 2015).

example besides document preparer?"  (Tr. 73) Counsel responded, " I haven't asked that yet."
(Tr.  73).

Counsel also asked Ms. Gonzalez whether the DOT and the SCO "provide temperaments
for a job." (Tr.  73). Ms. Gonzalez answered this question in the affirmative, stating this
information was contained in the Revised Handbook for Analyzing Jobs (RHAJ)[4] and explaining
"the DOT is the one book, but then you have the other addenda that indicates the temperament and
other things that go along with it." (Tr.  73-74). Counsel further inquired of the RHAJ's
"temperament" ratings as follows:

> Q. …[A]s to those temperaments, so from the [RHAJ], but consistent with
> the DOT and the SCO, is an R for repetitive described as set procedures sequence
> or pace?
>
> A. I don't understand your question because the temperament doesn't have
> to do with that.
>
> Q. Why do you say that?
>
> A. No, just tell me what you're saying and that's why I don't understand.
>
> Q. Is temperament defined as R -- for an R, performing repetitive or short-
> cycle work, involves performing a few routine and uninvolved tasks over and over
> again according to set procedures, sequence or pace with little opportunity for a
> diversion or interruption?
>
> A. Yes.
>
> Q. How do you reconcile or can you reconcile that with end-of-workday
> production measurements and not pace-measured production, if I'm quoting
> correctly the original hypothetical question?

---

[4] The RHAJ was published by the Department of Labor in 1991 and is a "systematic study" of
specific jobs in terms of: (1) "[t]he worker's relationship to data, people, and things;" (2) "[t]he
methodologies and techniques employed;" (3) "[t]he machines, tools, equipment, and work aids used;" (4)
"[t]he materials, products, subject matter, or services which result;" and (5) "[t]he worker attributes that
contribute to successful job performance." https://skilltran.com/index.php/support-
area/documentation/1991rhaj, Chapter 1.

A. The repetitive that they're talking about is short-cycle work and that's what the R stands for, but I don't know that I have to reconcile it. I mean, that's the – the reasoning levels 1 and 2 should fit the hypothetical that I was posed.

Q. Well, now I'm asking about the temperament R, not the reasoning level.

A. Okay. Well, the temperament R is performing repetitive or short cycle work. That's what it means.

Q. But according to set procedure, sequence or pace with little opportunity for diversion or interruption, that's the part that I'm asking about.

A. I don't remember that part, I really don't.

(Tr.  74-75)

Counsel also cross-examined Ms. Gonzalez about the source of her job incidence data. Ms. Gonzalez obtained her data from JobBrowser, which is "authored" by "vocational expert[] Jeff Truthan" and published by SkillTRAN, and she used the job incidence figures it provided without alteration. (Tr.  75-76) Ms. Gonzalez acknowledged Mr. Truthan advises that JobBrowser's job incidence figures could be reduced "depending on the circumstances[,]" and explained that the figures could be altered in some situations. (Tr.  76-77).

Counsel asked Ms. Gonzalez whether the figures for the jobs she cited should be reduced, about the sources of JobBrowser's data, and JobBrowser's methodology in determining its job incidence figures. Counsel inquired as follows:

Q. The public marketing materials for [JobBrowser's] software and Mr. Truthan's other publications indicate that he advises that his software is not necessarily current as to each job listed, to the extent of some of these occupations, and I'm quoting "some of these occupations may no longer exist at all due to automation, outsourcing, offshoring, a combination with other occupations or obsolescence."
Is that potentially true for any of the three cited jobs?

A. The jobs that I cited are available in at least the numbers that I cited. The way that the numbers are determined is that the Department of Labor sends out surveys to ten different industries that have that particular job and then those numbers are tabulated and then Mr. Truthan gets those numbers from the Bureau

5

of Labor Statistics/Department of Labor and determines the numbers that are available.

The numbers that I cited are probably a lot lower than they truly exist in the economy, according to what [Mr. Truthan] said.

Q. Just to break this into two parts, then, the first part is describing the method for the source and it's a proportionate distribution and effort [PHONETIC], is that correct?

A. I think so, yeah.

Q. Oh, such that's what is happening, is it, say, an OES survey

…

Q. -- attributed by industry or industries in which that DOT occupation is likely to be found?

A. Correct.

Q. And there are some 804 such SOC codes, standard occupational classification?

A. I suppose so.

Q. And then it's a proportionate distribution, estimating…the number by DOT code, the number of jobs?

A. Yes.

…

A. I mean, I've talked to the people that determine the industries that are going to be surveyed from the Bureau of Labor Statistics and I've also talked with [Mr. Truthan], ad nauseam, okay, about these numbers. I have the information about how they're determined, as I'm sure you do, and so I'm confident that the numbers that I'm using are not overly reported. I think that they're under reported.

Q. And that's the second half of the question that I haven't asked about and I'm still asking about the method.

…

Q. …that method, though, is taking governmental sources

…

6

Q.  a Census survey, the Department of Labor information and publicly available

….

Q. -- information and doing a proportionate distribution assessment on that. So there is a source of the Census Bureau or the Bureau of Labor Statistics, but it does not provide these answers, job incidence data by DOT code. That is –

…

Q. an estimation then?

A It is.

…

A But this is the best we have.

(Tr.  77-79)

Ms.  Gonzalez  testified  these  figures  are  based  on  information  gathered  by  the Census Bureau, which considers full-time work to be 35 hours per week. (Tr.  81). Counsel asked Ms. Gonzalez if incidence figures existed for jobs that considered full-time work to be at least 40 hours per week, as opposed to 35 hours per week or more, and Ms. Gonzalez responded this figure was not available. (Tr.  81).

Plaintiff's  counsel  filed  a  post-hearing  brief  asserting:  (1)  unresolved  conflicts remained between Ms. Gonzalez's testimony about the available jobs and the information contained in the DOT, the SCO, and the RHAJ; (2) Ms. Gonzalez misused JobBrowser's job incidence data by failing to apply "significant reductive adjustments" to account for "automation,  outsourcing,  off-shoring,  combination  with  other  occupations,  or obsolescence[;]" and (3) the record lacked necessary regional job incidence data.  (Tr.  343-385)   Plaintiff attached several supporting exhibits to her brief, including answers to

interrogatories submitted to J. Stephen Dolan, M.A., a certified rehabilitation counselor, related to a different Social Security proceeding. (Tr.  352-354) Based on information obtained from O*Net[5] and the Occupational Outlook Handbook,[6] Mr. Dolan opined: (1) the job of addresser (DOT# 209.587-010) has evolved from the position described in the DOT and is no longer an unskilled position because the "job is now done entirely by computer and so requires computer use skills[,]" and (2) the job of document preparer (DOT # 249.587-018) "no longer exists in significant numbers, if at all" and, due to the advancement in "computerized equipment, particularly scanners," "this job is typically done by an office worker using a computer" or by an office worker "doing a variety of clerical job tasks[.]" (Tr.  352-53).

Counsel attached the transcript of a presentation to the conference of the National Organization of Social Security Claimants' Representatives from April 2018 that featured Mr. Truthan and Daniel Wolstein Ph.D., a "principal and partner" at "Kincaid Wolstein Vocational Rehabilitation Services[,]" discussing issues related to the prevalence of unskilled sedentary jobs in the economy. (Tr.  356- 61). Counsel also included some of the slides from the SSA's May 2011 "Occupational and Medical-Vocational Claims Review Study" which state: "Our study found a substantial number of cases where [adjudicators]

---

[5] O*Net is a database "containing information on hundreds of standardized and occupation-specific descriptors" for occupations. https://www.onetonline.org/help/onet/. The Department of Labor and the Employment and Training Administration sponsor O*Net's data collection. https://www.dol.gov/agencies/eta/onet/data-collection.

[6] The Occupational Outlook Handbook is published by the U.S. Bureau of Labor Statistics and "provides information on what workers do; the work environment; education, training, and other qualifications; pay; the job outlook; information on state and area data; similar occupations; and sources of additional information for more than 300 occupational profiles covering" approximately 80 percent of the economy. https://www.bls.gov/ooh/; https://www.bls.gov/ooh/about/ooh-faqs.htm?view_full. The SSA has taken administrative notice of job data in this handbook. 20 C.F.R. §404.1566(d)(5).

cited jobs that might be obsolete" when denying claims at step five of the review process.[7] (Tr.  367) The presentation states that "addresser" is "cited in 9.5% of step 5 denial cases" and "[i]t is doubtful that [this] job[], as described in the DOT, currently exist[s] in significant numbers in our economy."[8] (Tr.  367).

### III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 404.1520(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which

---

[7] The presentation can be found on the SSA's website. https://www.ssa.gov/oidap/Documents/PRESENTATION--TRAPANI%20AND%20HARKIN--OIDAP%2005-04-11.pdf.

[8] Plaintiff notes this presentation also includes the job of  "cutter-and-paster, press clippings" as an example of an obsolete job which is cited in 0.9 % of benefit denials. Plaintiff suggests this job is the same as a "document preparer, microfilming" with DOT number 249.587-018 which was cited by Ms. Gonzalez in her testimony. [ECF No. 14 at 9] In fact, "cutter-and-paster, pressing clippings" is DOT number 249.587-014 and the two positions have different job descriptions. Plaintiff has presented the Court with no authority supporting her position that these jobs are interchangeable.

significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a), (c). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d)

Prior to step four, the Commissioner must assess the claimant's RFC, which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. §§ 404.1520(a), (e), 416.920(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. § 404.1520(g).

## IV.     ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since November 1, 2017, the alleged onset date; and (2) had the severe impairments of schizoaffective disorder, attention-deficit hyperactivity disorder, and autistic disorder. (Tr.   13-14) The ALJ concluded Plaintiff had the non-severe impairments of gastroesophageal reflux disease, acne, and hyperhidrosis. (Tr.   14) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically-equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.   14). Specifically, the ALJ found Plaintiff's mental impairments considered singly and in combination, did not meet or medically equal the criteria of listings 12.03, 12.04, 12.06, or 12.11 because Plaintiff demonstrated no limitation or mild to moderate limitations in the four broad functional areas under paragraph B of the listings. (Tr.  14-15).

The ALJ determined Plaintiff had the RFC to:

[P]erform a full range of work at all exertional levels but with the following non[-] exertional limitations: she is limited to work that involves only simple and or repetitive tasks with no close interaction with the public or coworkers.

(Tr.  15)

Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr.  24)  Based on Plaintiff's age, education, work experience, and RFC, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as addresser (DOT No. 209.587-101), document preparer (DOT No. 249.587-018), and housekeeping cleaner (DOT No. 323.687-014). (Tr.  25)

Consistent with the vocational expert's testimony, the ALJ found the number of jobs available in the national economy for addresser, document preparer, and housekeeping cleaner were, respectively: 4,641; 46,646; and 133,343. (Tr. 25)  The ALJ determined "[p]ursuant to SSR 00-4p…the vocational expert's testimony is consistent with the information contained in the [DOT]." (Tr. 25) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 25)

## V.  Discussion

Plaintiff argues the ALJ erred at step five by relying on Ms. Gonzalez's testimony that Plaintiff was able to perform other jobs that existed in significant numbers in the national economy despite Ms. Gonzalez's opinion being unreliable. In addition, Plaintiff contends the ALJ failed to address Plaintiff's objections and consider Plaintiff's rebuttal evidence and opinions. [ECF No. 14] Specifically, Plaintiff argues the ALJ erred by failing to: (1) ask Ms. Gonzalez whether conflicts existed between her opinion and the DOT and the RHAJ; (2) address that Ms. Gonzalez's job incidence data lacked "indicia of reliability" because it was not supported by the cited source, included jobs that failed to satisfy the hypothetical question, and failed to satisfy Defendant's policy of considering only full-time jobs; (3) address the contrary evidence and opinions Plaintiff submitted regarding the job incidence of addressers and document preparers; and (4) obtain and consider evidence of regional diversity for the cited jobs. Based on these alleged deficiencies, Plaintiff contends that the ALJ's determination is not supported by substantial evidence.

In response, the Commissioner asserts: (1) the ALJ did not have to inquire about conflicts between Ms. Gonzalez's testimony and the DOT because the ALJ reasonably found there was no conflict present, (2) the ALJ did not have a duty to inquire about conflicts between Ms. Gonzalez's testimony and the RHAJ, (3)  Ms. Gonzalez's job incidence data possessed the requisite indicia of reliability, (4) the ALJ was not required to address the contrary evidence and opinions Plaintiff

submitted to the ALJ for consideration, and (5) the ALJ did not need to obtain and consider evidence of regional diversity of the cited jobs because the identified jobs were not regionally isolated in nature and existed in sufficiently large numbers to satisfy the Commissioner's burden. [ECF No. 17]

A. <u>Standard of Judicial Review</u>

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." <u>Chesser v. Berryhill</u>, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." <u>Id</u>. (quoting <u>Prosch</u>, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" <u>Wright v. Colvin</u>, 789 F.3d 847, 852 (8th Cir. 2015) (quoting <u>Perkins v. Astrue</u>, 648 F.3d 892, 897 (8th Cir. 2011)).

B. <u>Alleged Conflicts Between Ms. Gonzalez's Testimony and the DOT and the RHAJ</u>

1. Alleged conflicts between Ms. Gonzalez's testimony and the DOT

Plaintiff contends the ALJ improperly relied on Ms. Gonzalez's testimony because the ALJ left unresolved apparent conflicts between Ms. Gonzalez's testimony and certain functional limitations contained in the DOT. Plaintiff asserts the ALJ was required to inquire of Ms. Gonzalez about those conflicts and resolve the conflicts in his disposition.

At step five, the Commissioner has the burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). See also Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). "The Commissioner may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005). The ALJ, however, cannot rely on testimony that conflicts or appears to conflict with information in the DOT without addressing and resolving the conflict. SSR 00-4p, 2000 WL 1898704, at *2-*4; Stanton v. Comm'r, Soc. Sec. Admin., 899 F.3d 555, 558 (8th Cir. 2018). If the ALJ does not identify and resolve the apparent conflict, "the vocational expert's testimony is not substantial evidence to support the denial of benefits." Stanton, 899 F.3d at 558.

The Commissioner adopted this rule in Social Security Ruling 00-4p, stating "[w]hen a [vocational expert]...provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert]...evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. If there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ "will obtain a reasonable explanation for the apparent conflict." Id. The ALJ must resolve the conflict before relying on the expert's testimony in support of its determination, and

14

must explain in the decision how the ALJ resolved the conflict. [9] Id. Thus, "[w]hether the vocational expert's testimony is substantial evidence in support of the ALJ's decision depends on whether the expert's testimony appears to conflict with the DOT, and if so, whether the ALJ resolved the conflict." Stanton, 899 F.3d at 558.

Plaintiff contends a conflict exists between Ms. Gonzalez's testimony that the job of document preparer met the ALJ's hypothetical that limited work to "simple…tasks" because the DOT states a document preparer requires a "reasoning level" three. [ECF No. 14] Plaintiff also argues Ms. Gonzalez's testimony that the job of housekeeper met the ALJ's hypothetical limit of "no close interaction with the public or coworkers" conflicts with DOT's assessment that a housekeeper renders "personal assistance to patrons" and involves moving furniture, hanging drapes and rolling carpets, tasks Plaintiff asserts "plainly involve teamwork[.]" [Id.]

The DOT includes a "reasoning level" between one and six for each listed job, and includes the following definitions for reasoning levels one through three:

> 01 Level Reasoning Development
> Applying commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variable in or from these situations encountered on the job.
> ..
> 02 Level Reasoning Development
> Applying commonsense understanding to carry out detailed but involved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
> …
> 03 Level Reasoning Development
> Applying commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.[10]

---

[9] SSR 00-04p imposes an identical requirement on information contained in the SCO. SSR 00-04p, 2000 WL 1898704, at *1.

[10] https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC

According to the DOT, a "document preparer, microfilming" DOT No. 249.587-018, is a reasoning level three.[11] During cross-examination, Ms. Gonzalez confirmed that a document preparer is a reasoning level three and provided the DOT's definition for this level. Ms. Gonzalez also testified that these levels are a "building scale" meaning that a "3 [is] more than a 2." (Tr. 72)  After setting forth the definitions for reasoning levels two and three, Ms. Gonzalez asked counsel, "Would you like for me to cite a different example beside document preparer?" (Tr.  72). Counsel responded in the negative, saying "I haven't asked that yet." (Tr.  72). Later in the hearing, in response to counsel's questions about the RHAJ's temperaments ratings for repetitive work, Ms. Gonzalez stated that repetitive work, or work involving "performing a few routine and uninvolved tasks over and over again according to set procedures, sequence or pace with little opportunity for a diversion or interruption" corresponded to "the reasoning levels 1 and 2" and "should fit the hypothetical that I was posed." (Tr.  75)

Plaintiff argues Ms. Gonzalez's "testimony that the job of document preparer could be performed within the limits of the hypothetical question created unresolved conflicts with the DOT" because "[t]he DOT describes a document preparer as 'reasoning level' three ('several concrete variables') – more than simple." Plaintiff does not cite any authority in support of her contention that a conflict exists between a hypothetical limited to "simple" work and a job requiring a reasoning level three. Some courts, however, have held "there is an apparent conflict between a  limitation to simple, routine, or repetitive tasks and the requirements of level-three reasoning." Ferguson v. Berryhill, 381 F. Supp. 3d 702, 708 (W.D. Vir. May 21, 2019); see also

---

[11] See https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02C (stating a "document preparer, microfilming" has a "GED: R3" rating, meaning that on the "General Education Development" scale it has a level three in "reasoning development"); https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (Appendix C of the DOT providing definitions for the components in the "definition trailer" following each job's description).

Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005), Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015). Compare Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (no apparent conflict between jobs with reasoning level three and the ALJ's conclusion the claimant retained the capacity to perform only "simple" work).

Eighth Circuit precedent on this issue is not entirely clear; however, the court has recognized that limiting a claimant "to understand[ing], remember[ing], and follow[ing] simple, concrete instructions" is "arguably inconsistent" or in "tension" with a job requiring level three reasoning. See Hillier v. Social Sec. Admin., 486 F.3d 359, 367-68 (8th Cir. 2007) (noting that "[i]n the abstract, tension exists between only being able to understand, remember and follow simple concrete instructions and working as a cashier[,]" a job with reasoning level three); Clay v. Barnhart, 417 F.3d 922, 931 (8th Cir. 2005) (noting the vocational expert's testimony that a claimant limited to understanding, remembering, and following simple, concrete instructions was "arguably inconsistent with the [DOT's] definition of the job of cashier"); Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (ALJ's finding that claimant with "borderline intellectual functioning" who could "follow simple directions" is incompatible with jobs requiring "level two reasoning or higher"). Compare Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) (inability to do complex work is not in conflict with a job requiring a reasoning level of three).[12]

---

[12] Although not cited by Plaintiff in support of her argument, Plaintiff's post-hearing brief to the ALJ included a "memorandum" purportedly issued by the SSA Director of Division of Field Procedures in December 2009 titled, "Use of Electronic Occupational References for Administrative Law Judges and Senior Attorney Adjudicator Decisions – UPDATE[.]" This document includes a "reminder" that SSA does not rely on DOT ratings for General Education Development ratings, which includes reasoning levels, "to conclude whether a claimant can perform a particular occupation when we cite occupations that demonstrate the ability to do other work. However, adjudicators should consider GED ratings that may appear to conflict with the claimant's RFC and the cited occupation(s); for example, an occupation with a GED reasoning level of 3 or higher for a claimant who is limited to performing simple, routine, or unskilled tasks." (Tr. 371).

In response to the ALJ's hypothetical that included a limitation to "simple and/or repetitive-type work" Ms. Gonzalez testified the jobs of addresser, document preparer, and a housekeeper meet the ALJ's hypothetical. (Tr.  72) During cross-examination, Ms. Gonzalez testified accurately that a housekeeper was a reasoning level one, an addresser was a reasoning level two, and a document preparer was a reasoning level three. (Tr.  72). Ms. Gonzalez was not asked by counsel to explain why she believed a reasoning level three met the ALJ's hypothetical, and she did not voluntarily provide an explanation.  Instead, Ms. Gonzalez responded to counsel's examination regarding reasoning levels only to inquire if she should provide a "different example beside document preparer." (Tr.  72). This exchange suggests Ms. Gonzalez understood that counsel believed a job requiring a reasoning level of three did not meet the ALJ's proposed hypothetical requiring "simple and/or repetitive tasks." Ms. Gonzalez's offer to provide additional positions combined with her later testimony that jobs with the "reasoning levels 1 and 2 should fit the [ALJ's] hypothetical" suggest a potential conflict between Ms. Gonzalez's testimony and the DOT's description of the requirements for a document preparer.  The ALJ did not follow up with Ms. Gonzalez to resolve or explain the potential conflict. However, potential error was harmless because Ms. Gonzalez cited two additional jobs, addresser and housekeeper, with reasoning levels that met the ALJ's hypothetical. See Grable v. Colvin, 770 F.3d 1196, 1202 (8th Cir. 2014) (a vocational expert's "mistaken recommendation" can be harmless error where he or she has recommended other work that a claimant can perform with her RFC); Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012) (to show error was not harmless, plaintiff must provide indication that ALJ would have decided differently had error not occurred).

Plaintiff also argues Ms. Gonzalez's testimony that the job of housekeeper met the ALJ's hypothetical with the limitation of "no close interaction with the public or coworkers" conflicted

18

with the DOT's description of the job of a housekeeper. The hypothetical that the ALJ presented included limitations that the job "didn't require close interaction with the public in the sense of no jobs like customer service or retail sales and no close interaction with co-workers to determine work duties, work processes, work locations, work tools, things of that nature; no teamwork-type jobs, solitary-type employment." The DOT states that the job of "cleaner, housekeeping (any industry) [DOT # 323.687-014]" includes:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title.[13]

Plaintiff argues an unresolved conflict exists because "according to the DOT a housekeeping cleaner must render 'personal assistance to patrons' – a job duty that is obvious to anyone who has stayed in a hotel and interacted with the room-cleaning staff" which conflicts with the ALJ's limit of "no close interaction with the public[.]" [ECF No. 14]  Plaintiff also argues the DOT's requirement that "a housekeeping cleaner must move furniture, hang drapes and roll carpets" are "all tasks that plainly involve teamwork and conflict with the [ALJ's] limit to 'no close interaction with ….coworkers.'" [ECF No. 14]

The DOT's definitions "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Moore v. Astrue, 623 F.3d 599, 604–05 (8th Cir. 2010); Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000).  "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Wheeler, 224 F.3d at 897.  Thus,

---

[13] https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03A.

"not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." Id.

Contrary to Plaintiff's suggestion, it is not clear that rendering "personal assistance to patrons" requires face-to-face interaction between the employee and the clients. Furthermore, although Plaintiff's argument focuses on room cleaning staff in a hotel, the DOT specifically states that the job is available in "any industry" and includes cleaning "rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories[.]" Thus, even if this job required some interaction with the public in some industries, it is not apparent that personal interaction with the public is required across every industry in which this job is found. Similarly, while moving furniture, hanging drapes, and rolling carpets may be required for some housekeeping positions, Plaintiff presents no support for a finding that these tasks are routinely required across all industries employing housekeepers or that these tasks inherently require more than one person.[14] Because there was no apparent conflict between the vocational expert's testimony, the ALJ's hypothetical, and the DOT's description of a housekeeper, the ALJ did not have an obligation to ask Ms. Gonzalez's to reconcile her testimony with the DOT.

2.  Alleged conflicts between Ms. Gonzalez's testimony and the RHAJ

Plaintiff argues the ALJ was also required to inquire about and resolve any apparent conflicts between the vocational expert's testimony and information contained in the RHAJ. Specifically, Plaintiff asserts the ALJ had to resolve the conflicts between: (1) the RHAJ's

---

[14] Furniture, drapes, and carpets come in a variety of sizes and materials. The DOT description does not suggest that housekeepers deal only with large, heavy, or otherwise cumbersome objects. Pursuant to the DOT, housekeeping is considered to be "light work." https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT03A (DOT No. 323.687-014 has a strength rating of "L"); https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (strength rating "L" stands for "light work" which requires "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly.").

temperament ratings for all three positions and Ms. Gonzalez's testimony that these positions met the ALJ's hypothetical limiting Plaintiff to "solitary-type employment," (2) the RHAJ's temperament rating of "variety" for a document preparer, meaning the employee encountered "frequent changes of tasks[,]" and Ms. Gonzalez's testimony that this job met the ALJ's hypothetical work limitation to "repetitive" work, and (3) the RHAJ's temperament rating of "repetitive" or needing to perform "over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption" for the job of addresser and Ms. Gonzalez's testimony that this job met the ALJ's proposed hypothetical allowing for "end-of-day" rather than "paced production[.]"

The Commissioner responds that the ALJ is not required to resolve conflicts between a vocational expert's testimony and the RHAJ. [ECF No. 17] The Commissioner further contends Plaintiff's argument that her RFC conflicts with the temperament codes in the RHAJ is premised upon counsel's interpretation of Plaintiff's RFC and the RHAJ. [ECF No 17]

Assuming conflicts exist between the RHAJ's temperament codes for the listed jobs and Ms. Gonzalez's testimony that the jobs met the ALJ's hypothetical limitations, there is no requirement for the ALJ to resolve these conflicts. Plaintiff fails to cite any precedent in support of her contention that the ALJ has a duty to resolve apparent conflicts between information derived from the RHAJ and the vocational expert's testimony. Instead, Plaintiff's point on appeal is premised upon Ms. Gonzalez's testimony that the RHAJ is an addendum to the DOT and Plaintiff's argument that the SSA "takes administrative notice of 'reliable job information available from various governmental and other publications' with the DOT as one example" pursuant to 20 C.F.R. §404.1566(d). [ECF No. 14]  20 C.F.R. § 404.1566(d) states the agency "will take administrative notice of reliable job information available from various governmental and other publications" and

21

cites to five publications as examples of sources of available information. While the DOT is included in this list, the RHAJ is not. 20 C.F.R. §404.1566(d)(1)-(5). Tait v. Commissioner of Social Sec., 13-CV-12667, 2014 WL 4187942, at *24 (E.D. Mich. Aug. 22, 2014) (citing 20 C.F.R. § 404.1566(d) and noting the Commissioner has not taken administrative notice of the RHAJ).

The Eighth Circuit has held that SSR-04p "does not impose a duty on the ALJ to obtain a reasonable explanation when the [vocational expert] simply testifies to information not found in the DOT – but that does not conflict with it." Courtney v. Commissioner, 894 F. 3d 1000, 1004 (8th Cir. 2018). "[U]nless a [vocational expert's] testimony appears to conflict with the DOT, there is no *requirement* that an ALJ inquire as to the precise basis for the expert's testimony regarding the extra-DOT information." Id. at 1005 (emphasis in original). See also Webster v. Commissioner of Social Security, 773 Fed. Appx. 553, 555-56 (11th Cir. 2019) (rejecting the claimant's argument that the ALJ is required to independently investigate a conflict between the vocational expert's testimony and job availability figures provided by the Bureau of Labor Statistics in its publication the Occupational Employment Statistics). Several other courts have concluded the ALJ is not required to resolve alleged conflicts between the vocational expert's testimony and the RHAJ. See Szoke v. Kijakazi, 8:21-CV-502-CPT, 2022 WL 17249443, at *12 (M.D. Fla. Nov. 28, 2022) (while the RHAJ may include information from the DOT, it does not provide a basis for claiming there is a cognizable discrepancy between the DOT and the vocational expert's testimony); Shreeve v. Saul, 2:19-CV 2105, 2020 WL 5809958, at * 7 (W.D. Ark. Sept. 11, 2020), report and recommendation adopted, 2020 WL 5803466 (W.D. Ark. Sept. 29, 2020) (temperament codes are not part of the DOT or the SCO, and the ALJ is not required to resolve conflicts between the vocational expert's testimony and all supplemental sources); Tait, 13-CV-12667, 2014 WL 4187942, at *24 (E.D. Mich. Aug. 22, 2014) (SSR-04p does not apply to conflicts between a

vocational expert's testimony and the RHAJ). Because Plaintiff has provided no support for her contention that the ALJ is required to resolve the alleged conflicts between Ms. Gonzalez's testimony and the RHAJ, the ALJ did not err by failing to ask Ms. Gonzalez to provide an explanation for the alleged conflicts or to address the alleged conflicts in his determination.

    C.  Reliability of the Job Incidence Data and Plaintiff's Post-Hearing Submissions

Plaintiff asserts the ALJ committed reversible error by failing to address the reliability of Ms. Gonzalez's job incidence data and Plaintiff's post-hearing filings allegedly contradicting Ms. Gonzalez's testimony regarding the number of jobs for addressers and document preparers in the modern economy. Plaintiff maintains Biestek, 139 S. Ct. 1148, dictates that "when the claimant's attorney has (as here) probed for the [vocational expert's] 'sources and methods,' the ALJ must then consider 'where [the vocational expert] got the information at issue and how [the expert] analyzed it and derived her conclusions.'" [ECF No. 14]  Plaintiff contends Biestek requires "the ALJ to decide 'how much to credit' the [vocational expert's] opinion" and "the ALJ failed to make such a decision by failing to address anything about [Ms. Gonzalez's] job incidence data other than a note that the ALJ found the number of jobs 'significant.'" [ECF No 14]

The Commissioner responds that the record supports the ALJ's reliance on Ms. Gonzalez's testimony because it demonstrates she is an experienced expert who testified at length regarding how she arrived at her opinion, and neither Plaintiff's cross-examination nor her post-hearing submissions undermined the reliability of Ms. Gonzalez's job numbers. The Commissioner further asserts that the ALJ was not required to address Plaintiff's post-hearing submissions in his determination.

Plaintiff's reliance on Biestek is misplaced because it "did not set forth any requirement that an ALJ must inquire into the basis for a [vocational expert's] testimony regarding job

availability, nor did it set forth any requirement that the ALJ articulate any findings regarding the reliability of the basis for the [vocational expert's] testimony." Hayden v. Saul, No. 4:19-CV-187-SPM, 2020 WL 888002, at *8  (E.D. Mo. Feb. 24, 2020). In Biestek, the Supreme Court held that a vocational expert's refusal to provide the data underlying her opinion upon the claimant's request does not categorically preclude the vocational expert's testimony from constituting "substantial evidence." Biestek, 139 S. Ct. at 1151. The Court rejected the claimant's argument that the vocational expert's refusal to provide data always interferes with effective cross-examination or that the absence of the data requires treating the expert's opinion as unreliable. Id. at 1156. The Court concluded that the question of whether a vocational expert's testimony constitutes substantial evidence must be determined on a "case-by-case" basis, taking into account "all features of the vocational expert's testimony, as well as the administrative record," while deferring to the ALJ. Id. at 1157. Factors relevant to the issue of whether a "reasonable mind" could accept the vocational expert's testimony include:  the vocational expert's credentials and experience, the basis of the expert's conclusions, whether the expert "cogently and thoroughly" answered the questions put to him or her, the presence of conflicting evidence in the record, whether the claimant's counsel requested the vocational expert's supporting data, whether the expert produced the requested data, and the expert's reasons for not disclosing any data on which she or he relied. Hayden, 2020 WL 888002, at *8 (citing Biestek, 139 S. Ct. at 1155-57).

Plaintiff asserts Ms. Gonzalez's job incidence data lacked "indicia of reliability" because her opinion was not supported by the cited source and failed to satisfy the Commissioner's policy of considering only full-time jobs.[15]  Specifically, Plaintiff contends the record demonstrates Ms.

---

[15] Plaintiff also argues Ms. Gonzalez's job incidence data was unreliable because her data included jobs that "failed to satisfy the hypothetical question[.]" [ECF No. 14]. The Court does not address this argument because Plaintiff did not develop this argument in her brief.

Gonzalez misused the job incidence data from JobBrowser by relying on its figures without change and "before the significant reductive adjustments for 'automation, outsourcing, off-shoring, combination with other occupations, or obsolescence" as described by "JobBrower's marketing materials[.]" [ECF No. 14] Plaintiff asserts her post-hearing filings demonstrated Ms. Gonzalez's misuse of JobBrower and undermined Ms. Gonzalez's testimony regarding the number of jobs for addressers and document preparers.

First, Plaintiff cites no authority to support her argument that the ALJ was required to address the evidence Plaintiff submitted in her post-hearing brief and that the ALJ's failure to do so warrants reversal.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("an ALJ is not required to discuss every piece of evidence submitted.") Furthermore, even if the ALJ had an obligation to address Plaintiff's evidence seeking to contradict Ms. Gonzalez's job incidence data for the jobs of addresser and document preparer, any alleged error was harmless. Even without consideration of these jobs, Ms. Gonzalez also testified to the existence of 133,343 housekeeping jobs in the national economy. This is undeniably a significant number of jobs and Plaintiff's post-hearing submissions presented no specific challenge to Ms. Gonzalez's figures for this job. See Grable, 770 F.3d at 1202 (a vocational experts "mistaken recommendation" can be harmless error where he or she has recommended other work that a claimant can perform with her RFC); Byes, 687 F.3d at 917  (to show error was not harmless, plaintiff must provide indication that ALJ would have decided differently had error not occurred).

As to Plaintiff's challenge to the reliability of Ms. Gonzalez's job incidence data as a whole, the record supports the ALJ's finding that Ms. Gonzalez's testimony was credible. Ms. Gonzalez is a certified rehabilitation counselor with over 36 years of experience working as a vocational rehabilitation counselor. (Tr.  332-34) Ms. Gonzalez provided extensive testimony

regarding her job incidence data during cross-examination. This included not just the source of her information, JobBrowser, but the origins of JobBrowser's raw data and the methodology JobBrowser employed to formulate its job incidence estimates.

Counsel cross-examined Ms. Gonzalez on whether JobBrowser's marketing materials advise users to reduce job incidence figures based on "automation, outsourcing, offshoring, a combination with other occupations or obsolescence" and whether Ms. Gonzalez's believed the figures for the jobs she cited should be reduced.  In response to counsel's inquiry, Ms. Gonzalez opined that the jobs she "cited are available in at least the numbers" she provided based on her experience and research in the industry. Plaintiff's reiteration of her concerns about the sources, reliability, and accuracy of Ms. Gonzalez's job incidence data in her post-hearing brief did not prevent the ALJ from concluding that Ms. Gonzalez's testimony was credible, particularly when Ms. Gonzalez addressed these contradictions during cross-examination and explained why she did not believe the job incidence data she obtained from JobBrowser required adjustment.

Plaintiff further contends the ALJ violated SSA policy that 40 hours per weeks constitutes full-time work because Ms. Gonzalez's job incidence data relied on data collected by the Census Bureau which includes job performed at 35 hours per week as full-time positions. [ECF No. 14] Plaintiff argues Ms. Gonzalez inclusion of "part-time positions in her job incidence data" rendered her job incidence data irrelevant and unreliable.  [ECF No. 14]

The Eighth Circuit has explicitly stated there is no requirement for a vocational expert to testify as to how many full-time jobs would be available for a claimant, holding a "vocational expert [is] neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available." Dipple v. Astrue, 601 F.3d 833, 836 (8th Cir. 2010).

26

Here, the ALJ asked Ms. Gonzalez whether there were jobs in that national economy that a hypothetical individual of Plaintiff's age, education, experience, and RFC could perform. Ms. Gonzalez answered in the affirmative and provided examples of three categories of jobs the hypothetical individual could perform and an estimate of how many of those jobs existed in the national economy. Although Ms. Gonzalez testified her job incidence data relied upon information obtained from the Census Bureau, which defines full time work as at least 35 hours per week, part-time jobs can be included within the total number of jobs provided.[16]

The ALJ found Ms. Gonzalez's testimony credible and that the number of jobs available in the national economy for each of the cited jobs was significant. After consideration of the evidence in the record in light of the factors discussed in Biestek, the Court finds substantial evidence supports the ALJ's reliance on Ms. Gonzalez's testimony about the number of jobs in the national economy that a person with Plaintiff's age, education, work experience, and RFC could perform.

D.   ALJ's Failure to Obtain and Consider Evidence of Regional Diversity

Plaintiff asserts the ALJ erred by failing to elicit and consider evidence showing the availability of jobs existing in significant numbers either in the region where Plaintiff lives or in several regions of the country. [ECF No. 14] The Commissioner responds that it met its burden at step five because the vocational expert testified to the existence of a large number of national jobs and there was no suggestion that these jobs would exist in relatively few locations. [ECF No. 17]

The Social Security Act states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

---

[16] The SSA has taken administrative notice of "Census Reports… published by the Bureau of the Census" as "reliable job information[.]" 20 C.F.R. §404.1566(d)(3).

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), *"work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country*.

42 U.S.C. § 423(d)(2)(A) (emphasis added).

The regulations further provide:

Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy." We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 404.1566(b).

The Commissioner has the burden of establishing that work exists in significant number in the national economy. 20 C.F.R. §404.1569(c)(2); Moore, 572 F.3d at 523. Plaintiff argues Ms. Gonzalez's opinion as to the total number of jobs available in the national economy fails to satisfy the Commissioner's burden and is insufficient evidence for the ALJ to make a finding at step five.

The parties do not direct the Court to any Eighth Circuit cases addressing the question of whether a vocational expert's statement of the number of jobs existing in the national economy is sufficient to satisfy the Commissioner's burden of showing "work which exists in significant numbers…in several regions of the country." See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  In Hayden, 2020 WL 888002, however, this court rejected a  similar challenge. The court noted there was a split among the courts as to whether evidence of jobs existing nationally could constitute sufficient evidence of work existing in several regions of the country. Id. at *10-11. While some courts found this evidence was sufficient "at least where there is nothing in the number of jobs or

28

the nature of the jobs identified to indicate that those jobs would exist only in limited number in isolated regions of the country[,]" other courts remanded to the ALJ for development of "more specific evidence regarding regional availability." Id.  The court concluded that the Commissioner had satisfied his burden because the DOT descriptions of the jobs did not suggest they would be "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[d]." Id. at * 11 (citing to 20 C.F.R. §§ 404.1566, 416.966). The Court is persuaded by the rationale in Hayden and holds that the Commissioner has met her burden of establishing that jobs exist in significant numbers in several regions of the country when the record demonstrates the existence of a significant number of the jobs in the national economy and "nothing in the number of jobs or the nature of the jobs identified… indicates that those jobs would exist only in limited number in isolated regions of the country."  Id. at * 10.

In this case, Ms. Gonzalez testified 4,641 addresser jobs; 46,646 document preparer jobs; and 133,343 housekeeping jobs exist in the national economy. (Tr.  70). Plaintiff does not argue there is anything about these jobs that would suggest they are isolated to certain regions of the country and nothing in the DOT's description of the jobs suggest regional isolation.[17] Thus, Ms.

---

[17] In addition to the definition for a housekeeper already provided, the DOT defines the job of addresser, DOT No. 209.587-010, as follows: "Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail."

The DOT states a "document preparer, microfilming" performs the following tasks: "[p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify [the microfilm camera operator] of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule." https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02C

Gonzalez identified more than 180,000 jobs in the national economy that Plaintiff could perform, none of which can be deemed to be regionally isolated in nature.[18] Based on the record, the Court finds substantial evidence supports the conclusion there is work existing in "several regions of the country" that Plaintiff can perform.

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of February, 2023.

---

[18] Again, Plaintiff presented no specific challenge to Ms. Gonzalez's job incidence data for housekeeping jobs, which total 133,343 nationally.